IN THE SUPREME COURT OF THE STATE OF IDAHO
Docket No. 44898

ADA COUNTY BOARD OF
EQUALIZATION,

    Petitioner-Respondent,

v.

J.R. SIMPLOT FOUNDATION, INC.,

    Respondent-Appellant.

)
)
)
)
)
)
)
)
)
)
)
)

Boise, December 2017 Term

2017 Opinion No. 130

Filed: December 21, 2017

Karel A. Lehrman, Clerk

---

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Richard D. Greenwood, District Judge.

District court order denying property tax exemption, affirmed.

Davison, Copple, Copple & Copple, LLP, Boise, for appellant. Terry C. Copple argued.

Jan Bennetts, Ada County Prosecutor, Boise, for respondent. Sherry A. Morgan, Deputy Ada County Prosecutor argued.

---

BURDICK, Chief Justice.

The J.R. Simplot Foundation (Foundation) appeals the Ada County district court's ruling that the charitable property tax exemption under Idaho Code section 63-602C did not apply to the property known as Jack's Urban Meeting Place (JUMP) while JUMP was under construction. In 2015, the Foundation applied for a charitable property tax exemption for JUMP. The Ada County Board of Equalization (Ada County) denied the tax exemption because JUMP was under construction and therefore not used exclusively for the Foundation's charitable purposes. The Idaho Board of Tax Appeals (IBTA) reversed, finding construction is not a "use" of the property and the only uses at JUMP were in furtherance of the Foundation's charitable objectives. Accordingly, the IBTA held JUMP was entitled to the property tax exemption. Ada County appealed the decision of the IBTA to the district court. The district court, ruling on cross motions for summary judgment, reversed the decision of the IBTA finding construction is a "use" of the property and that construction is not a charitable use. The Foundation timely appeals to this

1

Court and asks this Court to determine whether a charitable structure under construction is eligible for a tax exemption under section 63-602C. For the reasons discussed below, we affirm the district court's order denying the tax exemption.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

The JUMP facility is owned by the Foundation and consists of a 2.471 acre parcel in downtown Boise that is a six-story, multi-use structure that includes a three-story parking garage and outdoor space. The Foundation is a non-profit, charitable organization that uses JUMP for charitable purposes. Construction on JUMP began in 2012 and was completed in December 2015. The tax assessment date for the exemption at issue is January 1, 2015, which makes the determinative year 2014.

JUMP was under construction during 2014, and was about 70% complete on January 1, 2015. Approximately 500 people toured the facility during 2014, including both community leaders and members of the public as part of JUMP's efforts to gain community support for the facility and its mission. Boise State University students also toured the facility as part of a community involvement program sponsored by the general contractor. In December of 2015, JUMP held its grand opening and opened for general public admission.

JUMP is a unique property that is configured to be a public park, museum, and community center. Once completed, the property is not readily convertible to commercial purposes. The Foundation anticipates that JUMP will operate at a loss of over $900,000 a year, and require the Foundation to subsidize its operations going forward.

The Foundation applied to Ada County for a charitable property tax exemption for JUMP for tax year 2015 under Idaho Code section 63-602C. Ada County denied the Foundation's claim for a tax exemption during the period of construction. The Foundation appealed to the IBTA, which reversed and found JUMP was entitled to a tax exemption because of the charitable activities that occurred at JUMP during construction. Ada County then appealed to the district court, which reversed the IBTA, ruling that JUMP was not entitled to an exemption while under construction finding construction is a "use" under the statute, and not a charitable use. The Foundation timely appeals to this Court and asks this Court to determine whether a charitable structure under construction qualifies for a charitable tax exemption during construction.

## II.    ISSUES ON APPEAL

1. Is the JUMP facility entitled to a charitable property tax exemption under Idaho Code section 63-602C even though it was under construction during the year at issue?

2. Alternatively, does JUMP qualify for an exemption based on the activities at JUMP during construction?

## III. STANDARD OF REVIEW

"When reviewing a grant of summary judgment, this Court employs the same standard as the district court." *Idaho Youth Ranch, Inc. v. Ada Cnty. Bd. of Equalization*, 157 Idaho 180, 182, 335 P.3d 25, 27 (2014). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." I.R.C.P. 56(a).

> "Where the district court conducts a trial de novo in an appeal of a[n] [Idaho Board of Tax Appeals] decision, this Court defers to the district court's findings of fact that are supported by substantial evidence, but exercises free review over the district court's conclusions of law." "The interpretation of a statute is a question of law subject to free review."

*Kimbrough v. Idaho Bd. of Tax Appeals*, 150 Idaho 417, 419–20, 247 P.3d 644, 646–47 (2011) (citations omitted). "Interpretations of requirements for charitable exemption from property tax are questions of law over which this Court exercises free review." *Evangelical Lutheran Good Samaritan Soc'y v. Bd. of Equalization of Ada Cnty.*, 161 Idaho 378, 380, 386 P.3d 901, 903 (2016) (quoting *Housing Southwest Inc. v. Wash. Cnty.*, 128 Idaho 335, 337, 913 P.2d 68, 70 (1996)).

## IV. ANALYSIS

The issue on appeal is whether the JUMP property qualified for a charitable property tax exemption under Idaho Code section 63-602C on January 1, 2015, even though JUMP was still under construction. The Foundation argues that, as a matter of law, the charitable exemption should apply during construction to buildings that will be used for charitable work once completed. Alternatively, the Foundation argues that even if the charitable exemption does not apply during construction, the activities at JUMP during construction qualify it for the exemption. Ada County argues that construction of a building is not a charitable use, and as such, the charitable property exemption does not apply during construction. Ada County also argues the ancillary activities that took place at JUMP during construction do not qualify it for a tax exemption. For the reasons discussed below, the district court's order denying a tax exemption is affirmed.

**A. JUMP was not exempt from taxation under section 63-602C while it was under construction.**

It is well established in Idaho that tax exemption statutes are construed against the taxpayer. *See Evangelical Lutheran Good Samaritan Soc'y*, 161 Idaho at 380, 386 P.3d at 903. "Statutes granting exemptions, which exist as a matter of legislative grace, are strictly construed against the taxpayer and in favor of the state." *In re Evangelical Lutheran Good Samaritan Soc. (Good Samaritan Vill.)*, 119 Idaho 126, 129, 804 P.2d 299, 302 (1990). "Exemptions are never presumed." *Evangelical Lutheran Good Samaritan Soc'y*, 161 Idaho at 380, 386 P.3d at 903 (citations omitted). "The burden is on the claimant taxpayer to clearly establish a right of exemption and the terms of the exemption must be so specific and certain as to leave no room for doubt." *In re Evangelical Lutheran Good Samaritan Soc.*, 119 Idaho at 129, 804 P.2d at 302. "The courts are bound by the statute and cannot create or extend by judicial construction an exemption not specifically authorized." *Id.*

The statue at issue in this case provides in relevant part:

> The following property is exempt from taxation: property belonging to any fraternal, benevolent, or charitable limited liability company, corporation or society, the World War veteran organization buildings and memorials of this state, *used exclusively for the purposes for which such limited liability company, corporation or society is organized . . . .*

I.C. § 63-602C (emphasis added).

However, "charitable corporations or societies enjoy no inherent right to exemption from taxation; and their property is taxable except insofar as it is specifically exempt by constitutional provision or statutory enactment." *Malad Second Ward of the Church of Jesus Christ of Latter-Day Saints v. State Tax Comm'n*, 75 Idaho 162, 165, 269 P.2d 1077, 1079 (1954). To qualify for an exemption under the statute, an entity must prove two things: first, "that it is a charitable organization, and secondly, that the claimed exempt property is used exclusively for charitable purposes." *Evangelical Lutheran Good Samaritan Soc'y*, 161 Idaho at 381, 386 P.3d at 904 (quoting *In re Evangelical Lutheran Good Samaritan Soc'y*, 119 Idaho at 131, 804 P.2d at 304). Regarding the second requirement, "the exclusive use of the property must provide some gift or service of public benefit." *In re Evangelical Lutheran Good Samaritan Soc.*, 119 Idaho at 132, 804 P.2d at 305. If either of the two requirements are not met, "no exemption should be granted." *Student Loan Fund of Idaho, Inc. v. Payette Cnty.*, 138 Idaho 684, 688, 69 P.3d 104, 108 (2003).

In this case, neither party disputes that the Foundation is a charitable organization, so the first requirement is satisfied. Thus, the only remaining issue is whether the second requirement is satisfied, which requires JUMP be used exclusively for its charitable purposes as of January 1, 2015. The controversy in this case centers on the language in the statute that says the property seeking the exemption must be "used exclusively for the purposes for which such limited liability company, corporation or society is organized[.]" I.C. § 63-602C. The Foundation contends that a charitable structure that is being constructed should be tax exempt under the statute during construction. Ada County argues the language in the statute clearly requires exclusive, charitable use, which construction is not.

The tax exemption at issue in this case is governed by statute. *See* I.C. § 63-602C. Interpretation of a statute is a question of law, over which this Court exercises free review. *State v. Taylor*, 160 Idaho 381, 385, 373 P.3d 699, 703 (2016). When interpreting a statute, this Court begins with the plain language. *Id.*

> Our objective when interpreting a statute is "to derive the intent of the legislative body that adopted the act." Statutory interpretation begins with the statute's plain language. This Court considers the statute as a whole, and gives words their plain, usual, and ordinary meanings. When the statute's language is unambiguous, the legislature's clearly expressed intent must be given effect, and we do not need to go beyond the statute's plain language to consider other rules of statutory construction.

*Id.* (citations omitted) (quoting *State v. Owens*, 158 Idaho 1, 3, 343 P.3d 30, 32 (2015)).

> If the words of the statute are subject to more than one meaning, it is ambiguous and this Court must construe the statute "to mean what the legislature intended it to mean. To determine that intent, [this Court] examine[s] not only the literal words of the statute, but also the reasonableness of proposed constructions, the public policy behind the statute, and its legislative history."

*Id.* (quoting *Doe v. Boy Scouts of America*, 148 Idaho 427, 430, 224 P.3d 494, 497 (2009)).

Here, the plain language of the statute unambiguously indicates that to receive the charitable tax exemption the property must be *used exclusively* for the charitable purposes *for which the charitable company is organized*. I.C. § 63-602C. The Foundation argues that construction of a charitable building falls within this language. We disagree. An active construction site is not property that is being used exclusively for an organization's charitable purposes, as "the exclusive use of the property must provide some gift or service of public benefit." *In re Evangelical Lutheran Good Samaritan Soc.*, 119 Idaho at 132, 804 P.2d at 305. Here, the construction of a building is not providing "some gift or service of public benefit"

5

sufficient to satisfy that it is being used exclusively for the charitable purposes for which the Foundation is organized. While the building may ultimately end up being used for charitable purposes *in the future* once it is completed, it is not being used as such during construction.

This issue was addressed in 1998 in a district court case, *In re St. Luke's Regional Medical Center, Ltd.*, Ada County Case No. CV-OC-1997-4923 (1998), authored by then District Judge Eismann. In *St. Luke's*, Judge Eismann ruled that a medical facility was not entitled to a charitable tax exemption during construction. *Id.* at 11. Following the decision in *St. Luke's*, the legislature amended the exemption statute as it applies to hospitals to provide an exemption for hospitals during construction. H.B. 154, S.L. 1999, ch. 126, § 1. However, the legislature did not extend this exemption to other charitable entities.

The Foundation argues that the legislature's amendment of the hospital exemption statute to the exclusion of other charitable entities does not signify that the legislature intended to exclude other charitable entities, but rather was a decision made in the interest of time. However, this Court has held, "where the legislature expressly states one thing it is deemed to have excluded another[.]" *Nebeker v. Piper Aircraft Corp.*, 113 Idaho 609, 614, 747 P.2d 18, 23 (1987) (where the legislature "failed to amend the wrongful death statute, while at the same time amending other statutes affected by the new Uniform Probate Code, it must be presumed that the legislature intended that this Court continue its [existing] practice"). In this case, while it is true that the legislature did not state it intended to exclude other entities, it also did not—at the time or in the almost twenty years that have passed—amend the statute to exempt other charitable facilities during construction. The fact that the legislature amended the exemption statute as it applies to hospitals demonstrates the legislature was aware of the problem facing charitable entities during construction, and yet chose to amend the statute only as to hospitals, and not extend the exemption to other charitable entities.

Moreover, while the legislative history provides context for this statute, this Court only looks to the legislative history if the statute is ambiguous or unclear. *See Boy Scouts of America*, 148 Idaho at 430, 224 P.3d at 497. Such is not the case here. The statute's plain language is clear and states property must be "*used exclusively* for the purposes for which such limited liability company, corporation or society is organized[.]" I.C. § 63-602C (emphasis added). The statute provides no caveats or exceptions for charitable entities under construction. Such a determination is within the purview of the legislature. *See In re Evangelical Lutheran Good Samaritan Soc.*,

6

119 Idaho at 129, 804 P.2d at 302 ("The courts are bound by the statute and cannot create or extend by judicial construction an exemption not specifically authorized.").

As discussed above, the Foundation has the burden of establishing that it is entitled to receive the tax exemption for JUMP. *Id.* Here, the Foundation has not established it is entitled to the exemption, nor is the exemption so specific and certain as to leave no room for doubt. The Foundation relies on case law in other states to support its position that it should, as a matter of law, receive the property exemption for JUMP while JUMP was under construction. However, the exemption here is governed by section 63-602C, and this Court's analysis is governed by the plain language of the statute when the language is clear and unambiguous. Moreover, this Court has stated specifically, "the courts are bound by the statute and cannot create or extend by judicial construction an exemption not specifically authorized." *Id*. And, "where an exemption is claimed, the property to be exempt must be clearly defined and founded upon plain language, without doubt or ambiguity, and must come within the plain wording of the statute." *Malad Second Ward*, 75 Idaho at 165, 269 P.2d at 1079. The statute unambiguously requires an entity seeking an exemption to use the property exclusively for its charitable purpose.

Here, JUMP was not being used exclusively for the Foundation's charitable purposes while it was being constructed; rather, it was an active construction site. We decline to hold that construction of a charitable building, on its own, is sufficient to satisfy the requirement that "claimed exempt property is used exclusively for charitable purposes" under the exemption statute and under this Court's precedent. *See* I.C. 63-602C; *Evangelical Lutheran Good Samaritan Soc'y.*, 161 Idaho at 381, 386 P.3d at 904. Thus, the mere fact that the Foundation was constructing JUMP, a building that would perform charitable work once complete, is not sufficient to entitle to JUMP to a tax exemption under section 63-602C.

## B. The limited tours and activities that took place at JUMP during construction do not qualify JUMP for a tax exemption under the statute.

The Foundation contends that if this Court does not grant JUMP an exemption as a matter of law, then the activities that took place at JUMP during construction entitle JUMP to an exemption under the statute. Because the facts concerning the activities and tours of JUMP during construction are agreed upon by the parties, whether such activities were charitable is a question of law, and as such this Court has the authority determine whether JUMP is entitled to an exemption on this ground. *See id.* ("Interpretations of requirements for charitable exemption

from property tax are questions of law over which this Court exercises free review.") (quoting *Housing Southwest Inc.*, 128 Idaho at 337, 913 P.2d at 70).

The Foundation argues that, even if construction of a charitable building does not itself warrant an exemption, the limited tours and activities that took place during construction were charitable uses and thus warrant JUMP being exempt from property tax. This argument is unavailing. As an initial matter, section 63-602C still mandates that the claimed property be "used exclusively for the purposes for which such limited liability company, corporation or society is organized . . . ." And, "the exclusive use of the property must provide some gift or service of public benefit." *In re Evangelical Lutheran Good Samaritan Soc.*, 119 Idaho at 132, 804 P.2d at 305. A gift or service to the public can be "educational, religious, physical or [provide a] social benefit." *In re Sunny Ridge Manor, Inc.*, 106 Idaho 98, 100, 675 P.2d 813, 815 (1984). Considerations in determining whether a benefit is a gift or service to the public include whether the organization is fulfilling a need the government would otherwise need to fulfill, and whether the organization is benefiting the general public. *Evangelical Lutheran Good Samaritan Soc'y*, 161 Idaho at 384, 386 P.3d at 907.

Here, on January 1, 2015—the measuring date—JUMP was only 70% complete. None of the activities that JUMP is engaged in currently that entitle it to its charitable exemption— offering classes, community center activities, an agricultural museum—were taking place on January 1, 2015. During the preceding year, while under construction, JUMP held 21 tours; however, only about half of those were open to the public. Additionally, students in Boise State University's construction program were given five detailed site tours during construction. In total, about 500 people toured the facility as part of JUMP's efforts to gain community support. The Foundation also lists community presentations, outreach, and engagement activities as evidence of the charitable work being performed at JUMP during construction. Specifically, the Foundation points to various on-site interviews and meetings with different organizations that took place at JUMP. However, the limited tours, interviews, and meetings at the JUMP construction site did not provide a gift or service of public benefit to the community, nor is a tour or meeting at a construction site a charitable purpose for which the Foundation is organized, as is required under section 63-602C. *See* I.C. § 63-602C (stating claimed exempt property must be "used exclusively for the *purposes for which such limited liability company, corporation or society is organized* . . . ." (emphasis added)). The Foundation created JUMP to serve as a

creative community center and agricultural museum. While such activities are charitable and now serve as a basis for JUMP's current property tax exemption, the tours and meetings at the construction site while JUMP was being built do not qualify it for an exemption for 2015.

In sum, the activities cited by the Foundation were minimal, did not provide a service or benefit for the general public, and were not in furtherance of JUMP's purpose—that is, serving as a community creativity center and agricultural museum. Thus, these limited tours and activities cannot serve as the basis for granting JUMP a property tax exemption, as they do not demonstrate JUMP was being "used exclusively" for its charitable purpose while under construction. Accordingly, the JUMP property was not entitled to a tax exemption as of January 1, 2015, and the district court's decision to deny the exemption is affirmed.

## V.   CONCLUSION

We affirm the district court's denial of the property tax exemption for JUMP. Neither party requests attorney fees on appeal. Costs on appeal to Respondent.

Justices JONES, HORTON, BRODY and BEVAN, **CONCUR.**