# IN THE SUPREME COURT OF THE STATE OF IDAHO
## Docket No. 49856

| | |
|---|---|
| UPPER VALLEY COMMUNITY HEALTH SERVICES, INC., dba GRAND PEAKS MEDICAL, DENTAL, BEHAVIORAL HEALTH AND PHARMACY, ) ) ) ) ) | |
| Petitioner-Appellant, ) | Boise, May 2024 Term |
| ) | |
| v. ) | Opinion Filed: August 16, 2024 |
| ) | |
| MADISON COUNTY, a political subdivision of the State of Idaho, through the MADISON COUNTY BOARD OF EQUALIZATION, and the MADISON COUNTY ASSESSOR, ) ) ) ) | Melanie Gagnepain, Clerk |
| ) | |
| Respondents. ) | |

Appeal from the District Court of the Seventh Judicial District, State of Idaho, Madison County. Steven W. Boyce, District Judge.

The order of the district court is <u>reversed</u>, and this case is <u>remanded</u> for further proceedings.

Smith + Malek, PLLC, Coeur d'Alene, for Appellant, Upper Valley Community Health Services, Inc. Kolby K. Reddish argued.

Madison County, Rexburg, for Respondents Madison County. Troy D. Evans argued.

———————————————

MEYER, Justice.

This is an appeal by Upper Valley Community Health Services, Inc., dba Grand Peaks Medical, Dental, Behavioral Health and Pharmacy ("Grand Peaks"). Grand Peaks appeals the district court's decision to deny its request for a full tax exemption under Idaho Code section 63-602C, and the court's order to remand the case to the Madison County Board of Equalization for further proceedings. Grand Peaks argues that the district court correctly vacated the Board's award of a sixty-five percent partial tax exemption because that decision was "arbitrary and capricious," but contends that the district court erred by remanding the case for further factfinding by the Board. Grand Peaks maintains that the district court should have awarded it a full tax exemption because the record supports a finding that Grand Peaks is a charitable organization that uses its property

1

exclusively for charitable purposes. Madison County counters that the district court's decision to remand was correct and was within the district court's discretion under Idaho Code section 63-511. For the reasons discussed below, we reverse the district court's order for remand and hold that Grand Peaks is entitled to a full tax exemption under Idaho Code section 63-602C because it is a charitable organization and uses its property exclusively for the charitable purposes for which it was organized.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Grand Peaks applied to the Madison County Assessor for a property tax exemption for parcel numbers RPRRXB10383613, RPRRXB10385350, and RPRRXB10384570. All three properties are in Rexburg, Idaho, and comprise Grand Peaks' clinics and administrative offices. Grand Peaks' mission is to provide "quality primary and preventative health care as well as health related services to medically underserved communities and/or populations, regardless of a patient's ability to pay." Grand Peaks was originally founded as a free clinic, staffed by volunteer doctors and support staff. It later became a Federally Qualified Health Center under section 330(e) of the Public Health Service Act, 42 U.S.C. § 254b(e). *See also* 42 U.S.C. § 1395x(aa)(4) (defining "Federally qualified health center"). Grand Peaks is also a federally tax exempt organization under section 501(c)(3) of the Internal Revenue Code, 26 U.S.C. § 501(c)(3).

Grand Peaks sought tax exempt status for the 2019-2020 fiscal year under Idaho Code section 63-602C. Grand Peaks's revenue for the 2019-2020 fiscal year was $8,258,084, which included grant revenues. Its expenses for that period were $7,981,008. In the application for tax exempt status, Grand Peaks stated that "about 40% of our patients receive Medicaid benefits and 20% of our patients have no insurance coverage at all." Grand Peaks explained it received revenue from federal grants, and "[o]ur grant revenue amounted to about 30% of our total revenues for [the] last fiscal year." In a letter to the Madison County Assessor's Office, Grand Peaks stated that "[a]ll of Grand Peaks' fees are calculated based on family sized [sic] and income as it relates to the Federal Poverty Guidelines. We receive Federal Grant dollars that help to supplement patients not able or required to pay full fee for services received."

The Madison County Commissioners reviewed Grand Peaks' request for a full tax exemption and awarded Grand Peaks a partial tax exemption of sixty-five percent for the 2019-2020 fiscal year. A partial tax exemption was suggested by the Madison County Assessor, Mr. Boice, after one of the commissioners, who was a dentist, opined that when he had his dentistry

2

practice, he "never received a penny from the U.S. government," but "always paid his property taxes without any exemption." The commissioners "like[d] the idea of a partial exemption" as they did not "want to create unfair business practices" and they determined "there is a healthy revenue realized by Grand Peaks but there is an exemption that should be allowed for Medicare patients."

Grand Peaks then appealed to the Madison County Board of Equalization seeking a full tax exemption under Idaho Code section 63-602C. Grand Peaks sent a letter to the Madison County Board of Equalization in advance of the hearing, which included information about Grand Peaks' organization and the requirements for a tax exemption under Idaho Code section 63-602C. In the letter, Grand Peaks explained that it "was organized to provide healthcare services to underserved communities in Eastern Idaho," and that its Articles of Incorporation state Grand Peaks "is organized and operated exclusively for charitable and educational purposes, and exclusively in furtherance of such purposes shall carry out and promote only such activities and projects as are consistent with these articles." Grand Peaks stated it filed for tax exempt status "for the three parcels it owns" and that it "uses the real property as clinics to provide healthcare to Madison County residents[.]"

At the hearing, the Madison County Commissioners, sitting as the Madison County Board of Equalization, heard Grand Peaks' arguments as to why it should be granted a full tax exemption under Idaho Code section 63-602C. Grand Peaks explained to the Board how it met the requirements of a charitable organization under the statute, and clarified that "the work that is done here in Rexburg is charitable work. Some of it is discounted fully. Some of it is discounted partially. But for those who are in need, there is a discount, and it is a charitable organization or a charitable function." Grand Peaks' attorney also explained that Grand Peaks' business model is "dictated by the federal government as to whether or not somebody pays. The philosophy behind that being folks should have a vested interest in having responsibility for their own health care. . . . It's based on their income."

The Board also heard arguments related to whether Grand Peaks produced a profit. Grand Peaks' attorney contended that "there is no such thing as a profit when it comes to being a nonprofit organization. Are there times in which revenue exceeds expenses? Absolutely. But again, that is invested directly back into the care of the patients." Grand Peaks directed the Board to its Articles of Incorporation in support of its argument that the claimed properties were being used exclusively for charitable purposes.

3

During the hearing, several board members questioned Grand Peaks about competition with for-profit providers for patients:

[MR. [D.] SMITH[1]:] Our issue came with the competition of the fully insured people that should be going to someone who is not a nonprofit. We have a lot of for-profit places in town that pay property tax, that risk that every year, right? And I don't want to sound down here, but your advertising, for example, for patients, that bothered me just a little, honestly.

. . . .

CHAIRMAN [T.] SMITH: . . .[T]hat's where it kind of got me a little bit, when I see you doing a billboard, or whatever. And I can understand if you're just trying to get to those people that are uninsured so you can help them. But when, you know, me as a fully insured, capable, paying person can go to your place and take business away from one of our other doctors, that was my problem. That's—that's why we felt like 65 percent was—was more than fair.

One board member asked Grand Peaks' attorney: "How do you say that it's exclusively exempt property for charitable purposes when you accept paying patients, fully-paying patients, and you don't see emergencies over the weekend? Do you call that a charity?" The same board member then asked: "[W]ho pays the property tax for that guy that goes in and takes care of that patient, your patients (inaudible)? They're paying their property taxes. Why don't you have to pay your property taxes?" Grand Peaks countered that its business model requires a mix of insured and uninsured patients. Grand Peaks' attorney acknowledged that sometimes the business model could have a "competitive impact," but noted "that's not the mission of the organization. The mission of the organization is to serve the uninsured underserved population." The Board subsequently affirmed the sixty-five percent partial tax exemption to Grand Peaks.

Grand Peaks filed a petition for judicial review under Idaho Code section 63-511. The district court treated the petition as a review of an agency decision based on the parties' stipulation to forego a trial de novo. Grand Peaks emphasized to the district court that to qualify for a tax exemption, it would need to show that it was a charitable organization and that it used its property exclusively for charitable purposes. During oral arguments, Grand Peaks' attorney explained to the district court that "over 90 percent of the people who receive services at Grand Peaks receive some sort of discount on their services, and that's because it's on a sliding scale based on a person's

---

[1] Chairman Smith and Mr. Smith are two individuals who sit on the board and share the same last name. We will refer to them as "Chairman T. Smith" and "Mr. D. Smith."

ability to pay." Grand Peaks' attorney explained: "it's meant to be accessible, while also encouraging, obviously, people's investment in their own health care," as "Grand Peaks does not charge patients fees equal to the cost of their care." With respect to profit, Grand Peaks' counsel argued:

> But in this case there is no such thing as a profit. First of all, it's a nonprofit organization. There are no stakeholders that are being paid out of this. Its every dime that is in excess of expenses has been poured back into furthering the mission of the organization. And so there is simply no profit because it's a nonprofit organization.

Madison County countered that "about 30 percent of [Grand Peaks'] income comes from federal grants, 40 percent comes from Medicaid, and then about 20 percent of people don't have insurance." Madison County maintained that "we don't know if that's people that come in and pay cash—we don't know that—or if they truly just don't have any money, and they get free services." Madison County argued that "from [Grand Peaks'] application, the assessor, the worksheet, that Mr. Boice, the assessor, requires, 70 percent of what Grand Peaks Medical does has some monetary benefit to it." Madison County explained to the district court that the Board's "hangup" was "the people that don't pay are made up by those that do," and that Grand Peaks is "reimbursed for the federal grants and those things." Madison County argued the sixty-five percent tax exemption was appropriate because Grand Peaks is "receiving at least 70 percent of their income from outside sources. And they don't receive donations. Some people are required to pay; some people are not." Madison County acknowledged that the Board's numbers were not exact, but that they reached the sixty-five percent tax exemption because "65 percent is charitable, and 35 percent is for profit and paid by regularly paying clients."

Grand Peaks explained to the district court that "[t]here seems to be some confusion on [the exclusive use] factor." Grand Peaks reminded the district court that Madison County did not argue "that any property in question is used for anything other than charitable purposes," but instead argued that "some amount of operational existence is, quote, not charitable." Grand Peaks argued that Madison County was advocating for a different standard than what is contained in Idaho Code section 63-602C. The district court questioned Grand Peaks' counsel regarding the exclusive use requirement for a full tax exemption:

> THE COURT: . . . [S]o your understanding of Idaho law is that apportionment is only allowed as it relates to the physical property? It can't be considered, as you're looking at income, charitable versus for profit?

5

MR. MALEK: That's correct, Your Honor. We found no authority whatsoever. In fact, the only time that . . . . proportionality comes into play is under those second factors, which simply has to do with the subject properties themselves. . .

. . . .

. . . .[A]pportionment of a tax exemption is only appropriate where the exemption is ordered (verbatim) directly linked with the proportion of the property used for exempt purposes.

The district court then asked Madison County's attorney about Madison County's interpretation of Idaho Code section 63-602C:

THE COURT: [A]re you saying your interpretation of [Idaho Code section] 63-602[C] is that you can just look at the income revenue instead of just the use of real property?

MR. EVANS: So, Your Honor, our understanding in that is, you can – so the proportion part of the building – of course this is a property tax issue or used for such purposes. So with that last "or" of that statute, we think we can look at both.

And if you go further on that, you can also look at the trade fixtures, using connection with the merchandise. You know, it goes on. But I think for our part today, there's no question it's the property taxes of these three parcels and then what's used for that purpose, if that makes sense.

Following oral arguments, the district court issued its written decision including its findings of fact and conclusions of law required by Idaho Code section 63-511. The district court determined that Grand Peaks qualified as a charitable organization under Idaho Code section 63-602C based in part on its mission to "promote health and wellness by providing health care services to the medically uninsured, at no charge, using volunteer professional staff[,]" and the finding that Grand Peaks "is organized and operated exclusively for charitable and educational purposes[.]" The district court also found that Grand Peaks' property was being "used exclusively for charitable purposes" under Idaho Code section 63-602C, despite what the district court described as a "sparse" record in support of that prong of Idaho Code section 63-602C.

Even though the district court determined that Grand Peaks satisfied both prongs of Idaho Code section 63-602C—meaning that Grand Peaks was entitled to a full tax exemption—it continued to analyze whether Grand Peaks was entitled to a partial tax exemption. It remanded the case because it saw "an issue in the record that the property is being used for 'revenue generating' purposes, in that part of Grand Peaks' business operations include for-profit services." The district court relied on Idaho Code section 63-602C's provisions for partial tax exemptions and a definition

of "commercial purposes" from a different part of the Idaho Code and remanded the case for a determination by the Board whether a partial tax exemption was appropriate under Idaho Code section 63-602C. It determined that the decision-making process used by the Board to reach the sixty-five percent tax exemption was "arbitrary and capricious." The district court held that the Board's decision was not based on "substantial and competent evidence," but was rooted in "inapplicable considerations such as after-hour availability and competitive fairness." It vacated the sixty-five percent tax exemption.

Grand Peaks timely appealed the district court's decision. Grand Peaks argues that the district court erred when it remanded the case to the Board for further findings because Grand Peaks had established it was entitled to a full tax exemption under Idaho Code section 63-602C. Grand Peaks argues it established that it is a charitable organization that uses its property exclusively for charitable purposes and that the district court should have granted it a full tax exemption. Grand Peaks seeks attorney fees on appeal under Idaho Code section 12-117. Madison County argues that the district court did not err in remanding the case for further proceedings and that the district court acted within its authority under Idaho Code section 63-511(4) to remand the case.

## II. STANDARD OF REVIEW

Idaho Code section 63-511 addresses appeals from the county board of equalization. I.C. § 63-511. Subsection (3) allows a party to appeal to the board of tax appeals or to the district court. I.C. § 63-511(3). Subsection (4) states that the board of tax appeals or the district court "shall render its decision in writing, including therein a concise statement of the facts found by the court and the conclusions of law reached by the court." I.C. § 63-511(4). In many cases, the party seeking a tax exemption will elect to have a trial de novo as part of the appeal before the board of tax appeals, and *then* appeal that decision to the district court. However, in this instance, Grand Peaks elected to appeal directly to the district court and to forego a trial de novo. As a result, the district court reviewed the case acting in its appellate capacity but was still required to make findings of fact as part of its written decision. *Id.*

When a district court acts in its appellate capacity, "the reviewing court will not disturb the district court's factual findings if supported by substantial and competent evidence." *Corp. of Presiding Bishop of Church of Jesus-Christ of Latter-Day Saints v. Ada County*, 123 Idaho 410, 415, 849 P.2d 83, 88 (1993) (citation omitted). "However, this Court is not bound by the legal

7

conclusions of the district court and is free to draw its own conclusion from the facts presented." *Id.* (citation omitted). Interpretations of tax exemption requirements are questions of law over which this Court exercises free review. *Cmty. Action Agency, Inc. v. Bd. of Equalization of Nez Perce Cnty.*, 138 Idaho 82, 85, 57 P.3d 793, 796 (2002).

## III. ANALYSIS

As a preliminary matter, Madison County raised the issue whether the Order for Remand is a final, appealable order; however, it waived that issue during oral argument. As a result, the only issues on appeal are Grand Peaks' tax exempt status under Idaho Code section 63-602C and whether it is entitled to attorney fees on appeal under Idaho Code section 12-117.

### A. The district court erred when it remanded the case for the Board to consider a partial tax exemption because Grand Peaks was entitled to a full tax exemption under Idaho Code section 63-602.

Madison County does not challenge the district court's conclusion that Grand Peaks is a charitable organization under Idaho Code section 63-602C. At issue is whether Grand Peaks satisfied the second prong of Idaho Code section 63-602C—that its property is "used exclusively" for the charitable purposes for which Grand Peaks is organized—or whether remand was appropriate because factual issues remain regarding *partial* use of the property for "commercial purposes." Grand Peaks argues the record shows it established that its property was used exclusively for the charitable purposes for which it is organized, and it is entitled to a full tax exemption. Madison County argues the district court properly exercised its discretion in remanding the case and it correctly interpreted Idaho Code section 63-602C to consider a partial tax exemption even though it had determined that Grand Peaks was a charitable organization that used its property exclusively for charitable purposes.

#### 1. *The district court erroneously interpreted Idaho Code section 63-602C and did not apply the "exclusive use" test outlined in* Malad Second Ward of the Church of Jesus Christ of Latter-Day Saints v. State Tax Commission.

The district court concluded, in the absence of evidence or argument to the contrary, that Grand Peaks used its property exclusively for charitable purposes. However, later in the same opinion, it determined Grand Peaks' property was being used for "revenue-generating" purposes because "part of Grand Peaks' business operations include for-profit services." The district court noted that Idaho Code section 63-602C allows for partial tax exemptions when part of the property at issue is being used for "commercial purposes." It explained that Idaho Code section 63-602C does not define "commercial purposes" and it adopted a broad "commercial purposes" definition

from a non-tax section of the Idaho Code. The district court's definition of "commercial purposes" included "business and professional office buildings." It vacated the Board's award of a sixty-five percent tax exemption and remanded the case to determine whether Grand Peaks' property was being partially used for "commercial, revenue-generating purposes," and whether Grand Peaks was entitled to a partial tax exemption under the statute.

Grand Peaks argues that the district court erred by continuing to analyze whether it was entitled to a partial tax exemption because it established it was entitled to a full tax exemption under the statute. Grand Peaks maintains the district court erred by applying a broader definition of "commercial purposes" than what was required under the statute, and that it erred in looking to the income derived from the properties rather than how Grand Peaks used its properties. Grand Peaks posits in the alternative that, even if this Court were to determine it did not use its properties exclusively for charitable purposes, it would still be entitled to a full tax exemption based on an exception for charitable corporations addressed in the second part of the statute. Madison County argues that the district court did not err in continuing to analyze Grand Peaks' request for an exemption by looking to the part of the statute that addresses partial tax exemptions and that the district court had the authority under Idaho Code section 63-511(4) to remand the case for further proceedings.

Generally, tax exemption statutes are strictly construed against the taxpayer. *Housing Sw. Inc. v. Washington Cnty.*, 128 Idaho 335, 337–38, 913 P.2d 68, 70–71 (1996). Such exemptions are never presumed, and the taxpayer bears the burden of clearly establishing the right to an exemption. *Evangelical Lutheran Good Samaritan Soc'y v. Bd. of Equalization of Ada Cnty.*, 161 Idaho 378, 380, 385, 386 P.3d 901, 903, 908 (2016). When this Court interprets a tax exemption statute, we begin with its language. *Ada Cnty. Bd. of Equalization v. J.R. Simplot Found., Inc.*, 163 Idaho 75, 81, 408 P.3d 73, 79 (2017). Words are given "their plain, usual, and ordinary meanings." *Id.* (quoting *State v. Taylor*, 160 Idaho 381, 385, 373 P.3d 699, 703 (2016)). When we determine a statute's language is clear and unambiguous, we do not go beyond the statute's "plain language to consider other rules of statutory construction." *Id.* (quoting *Taylor*, 160 Idaho at 385, 373 P.3d at 703).

The part of Idaho Code section 63-602C at issue in this case authorizes tax exemptions for "property belonging to any fraternal, benevolent, or charitable limited liability company, corporation or society . . . used exclusively for the purposes for which such limited liability

company, corporation or society is organized[.]" I.C. § 63-602C. The "effect of this first clause is to provide that property belonging to a fraternal, benevolent or charitable entity is *presumptively exempt* from taxation." *Idaho Youth Ranch, Inc. v. Ada Cnty. Bd. of Equalization*, 157 Idaho 180, 185, 335 P.3d 25, 30 (2014) (emphasis added). We explained in *Idaho Youth Ranch* that "the remainder of the statute defines those circumstances when the exemption does not exist, either in whole or in part." *Id.* We have also held that "the plain language of the statute unambiguously indicates that to receive the charitable tax exemption the property must be *used exclusively* for the charitable purposes *for which the charitable company is organized*." *J.R. Simplot Foundation*, *Inc.*, 163 Idaho at 80, 408 P.3d at 78 (emphasis in original).

In *Malad*, this Court established the test for determining whether a property is being "used exclusively for charitable purposes." *Malad Second Ward of the Church of Jesus Christ of Latter-Day Saints v. State Tax Comm'n.*, 75 Idaho 162, 165, 269 P.2d 1077, 1079 (1954). The case dealt with a tax exemption request brought under the previous version of Idaho Code section 63-602C by the Church of Jesus Christ of Latter-day Saints for a wheat farm owned by the church. 75 Idaho at 164, 269 P.2d at 1078. The wheat from the farm was used to produce flour in Utah that was subsequently "distributed to the various wards and stakes of the church as a part of its welfare program for the use and benefit of indigent, aged and needy members." *Id.* We held "the test to be applied in determining [tax exempt status] is the *exclusive and primary use of the property* so owned by such . . . charitable corporation or society, and *not the use of the proceeds, income or produce derived from the property*." *Id.* at 166, 269 P.2d at 1079 (emphasis added). We determined the wheat farm was "not used exclusively for the purposes for which said corporation is organized." *Id.* We explained that "[t]he produce or income of the land in question, as distinguished from the land itself, is used for charitable purposes. The land is not actually occupied for any purpose mentioned in the pertinent parts of section 63-105 [now Idaho Code section 63-602C]." *Id.* We held "[i]n order to be exempt from taxation, ownership as well as use for the purposes mentioned in the statute must inhere." *Id.*

In this case, the record supports the district court's finding that the property is used exclusively for the charitable purposes for which Grand Peaks was organized. The letter Grand Peaks provided to the Board explained that the three properties it claimed as exempt comprised Grand Peaks' healthcare clinics and administrative offices. There was no evidence in the record that Grand Peaks was, for example, leasing part of its property to a for-profit healthcare provider

or another for-profit business, which may have warranted a partial tax exemption. *E.g. Boise Cent. Trades & Lab. Council, Inc. v. Bd. of Ada Cnty. Comm'rs.*, 122 Idaho 67, 72–73, 831 P.2d 535, 540–41 (1992) (holding portions of fraternal organization's property being leased to life insurance company and credit union were not exempt from taxation under the statute). The *Malad* case was clear that the *income* itself is *not* considered when determining whether a property is being *used exclusively* for charitable purposes but that it is *the use of the land itself* that matters. Madison County presented no evidence in the record that Grand Peaks' use of the property was for anything other than its mission of providing healthcare services to an uninsured and underserved population. The district court erred when it looked to Grand Peaks' "revenue-generating" activities—in the form of accepting fully insured patients alongside uninsured or underinsured patients—rather than looking to Grand Peaks' actual use of its properties. As a result, the district court erred in remanding the case for a determination whether a partial tax exemption was appropriate.

Grand Peaks also argued that the district court erred when it applied a different definition of "commercial purposes" that included "business and professional office buildings." We agree. The district court's decision to use a definition of "commercial purposes" from a non-tax section of the Idaho Code contributed to its error in interpreting Idaho Code section 63-602C. It would have been more prudent for the district court to look to the plain language of Idaho Code section 63-602C, which addressed "commercial purposes," or to look to Idaho caselaw interpreting the statute, such as *Boise Central*, for guidance. *See Boise Cent. Trades and Lab. Council, Inc.*, 122 Idaho 67, 831 P.2d 535 (discussing the earlier version of Idaho Code section 63-602C, numbered Idaho Code section 63-105C). In *Boise Central*, we explained:

> The fifth section of I.C. § 63-105C clarifies what will be considered "commercial purposes." Under this section, a lease or use for "athletic or recreational facilities, residence halls or dormitories, meeting rooms or halls, auditoriums or club rooms" that is consistent with the purpose of the organization, is not considered a "commercial purpose" even though the organization derives revenue from such use.

*Id.* at 72, 831 P.2d at 540. In that case, the labor council sought a full tax exemption under the previous version of section 63-602C for a building it owned (known as the "Boise Labor Temple"). We clarified that the labor council's decision to lease parts of its building to its own members did not qualify as a "commercial purpose" under the statute because that lease was consistent with the purpose of the organization, and as a result the labor council would not be taxed for those parts of the building. *Id.* However, we held that the labor council's decision to lease other parts of its building to a life insurance company and a credit union *did* qualify as leases for "commercial

11

purposes" under the statute. *Id.* at 72-73, 831 P.2d at 540-41. We held that, because the leases constituted more than three percent of the value of the Labor Temple, they did not "fall within the 3% exception" under the statute and were therefore subject to taxation. *Id.*

The district court's decision to apply a broader definition of "commercial purposes" from the Idaho Code section related to leases on public lands was erroneous. Its reliance on a definition related to leases was improper given that the district court acknowledged leases were not an issue in this case because Grand Peaks owns the properties. There is no indication in the record that Grand Peaks leases portions of its buildings to other organizations. The district court erred by adopting Madison County's interpretation of the statute and concluding that it could consider the income derived from the property as well as the use of the property. The Board's concern with income derived from fully insured patients may have played a role in the district court's decision to adopt a broader definition of "commercial purposes." However, as we explained in *Malad*, the use of the *income* from the property is *irrelevant* to the analysis of whether the property *itself* qualifies for a tax exemption.

> 2. *Substantial and competent evidence supports the conclusion that Grand Peaks is entitled to a full tax exemption under Idaho Code section 63-602C.*

As discussed above, to be entitled to a full tax exemption, Grand Peaks was required to show that it was a charitable organization and that it used its properties exclusively for the charitable purposes for which it was organized. Neither party disputes the district court's conclusion that Grand Peaks is a charitable organization under Idaho Code section 63-602C. Even though the district court described the evidence in the record below as sparse, there is substantial and competent evidence to support the district court's finding that Grand Peaks used its property exclusively for the charitable purposes for which it was organized—providing "quality primary and preventative health care as well as health related services to medically underserved communities and/or populations, regardless of a patient's ability to pay." Grand Peaks' letter explained that it owned the three properties being claimed as exempt and that those properties comprise its healthcare clinics and administrative offices. We thus hold that Grand Peaks is entitled to a full tax exemption under Idaho Code section 63-602C.

## B. Neither party is entitled to attorney fees on appeal.

Grand Peaks seeks an award of attorney fees on appeal under Idaho Code section 12-117. Idaho Code section 12-117(1) states:

> Unless otherwise provided by statute, in any proceeding involving as adverse parties a state agency or a political subdivision and a person, the state agency, political subdivision or the court hearing the proceeding, including on appeal, shall award the prevailing party reasonable attorney's fees, witness fees and other reasonable expenses, if it finds that the nonprevailing party acted without a reasonable basis in fact or law.

I.C. § 12-117(1). The purpose of section 12-117(1) is to "deter groundless or arbitrary agency action" and to assist parties "who have borne an unfair and unjustified financial burden attempting to correct mistakes agencies should never have made." *Flying A Ranch, Inc. v. Cnty. Comm'rs of Fremont Cnty.*, 157 Idaho 937, 943–44, 342 P.3d 649, 655–56 (2015) (quoting *Fuchs v. Idaho State Police, Alcohol Beverage Control*, 153 Idaho 114, 117, 279 P.3d 100, 103 (2012)). Under Idaho Code section 12-117(1), we apply a benchmark similar to "the standard for evaluating whether a party pursued an action 'frivolously, unreasonably, or without foundation' under section 12-121." *S Bar Ranch v. Elmore County*, 170 Idaho 282, 313, 510 P.3d 635, 666 (2022) (citations omitted). When determining whether to award attorney fees under this section, this Court has highlighted the "requirement that a losing party must act 'without a reasonable basis in fact or law' before fees can be awarded." *City of Osburn v. Randel,* 152 Idaho 906, 909, 277 P.3d 353, 356 (2012).

Grand Peaks is the prevailing party on appeal. We note at the outset that Idaho Code section 63-602C is a complicated statute, and we agree with the district court that it is "no easy read." We find that Madison County did not act without a reasonable basis in fact or law in defending against this appeal. The majority of Idaho caselaw interpreting Idaho Code section 63-602C addresses whether a taxpaying entity qualifies as a charitable organization under the statute or discusses the "exclusive use" requirement in the context of leasing parts of a property to unrelated organizations or businesses. There is a dearth of Idaho cases that apply Idaho Code section 63-602C to a non-profit healthcare provider. As a result, we decline to award attorney fees against Madison County on appeal under Idaho Code section 12-117, but we do award Grand Peaks costs on appeal.

## IV. CONCLUSION

For the above stated reasons, the district court's decision is reversed, and this case is remanded with the instruction to enter an order reversing the board of equalization's decision. On remand, the district court is instructed to grant the one hundred percent tax exemption or to order the board to grant Grand Peaks a one hundred percent tax exemption under Idaho Code section 63-

602C for the properties at issue. Grand Peaks is awarded costs on appeal pursuant to Idaho Appellate Rule 40.

Chief Justice BEVAN and Justices BRODY, ZAHN, and FLEMING, J. *pro tem*, CONCUR.